The next argument will be in case number 23-7266, Ash v. Miller. Thank you so much. Thank you. Mr. Shoemeister, whenever you're ready. Thank you, Your Honor. May it please the Court, and good morning. My name is Daniel Shoemeister, and I represent the petitioner appellant, Mr. Jamel Ash. Mr. Ash was convicted of secondary murder following a New York State bench trial where his attorney did not know the basic elements of homicide under New York State law. For that reason, and only for that reason, Mr. Ash's attorney completely failed to raise a very obvious, very strong defense that was also the best defense available. The State concedes that trial counsel's submission was so indefensible that his conduct fell below the minimum standard guaranteed by the Constitution. Accordingly, the only remaining question for Mr. Ash's Strickland ineffectiveness claim is whether he was prejudiced by his attorney's failings. That is, whether there's a mere reasonable probability, as the Supreme Court put it in Strickland, that the complete omission of Mr. Ash's best defense made a difference in the outcome of that trial. The State trial judge who presided over the post-conviction decision, which I'll refer to as the 440 decision from the statute in New York State law, there, the judge found Mr. Ash had not been prejudiced under Strickland, and that decision was contrary to and an unreasonable application of Strickland, as is required under AEDPA to remove the deference that federal courts provide. But why? Why is that? Your Honor, the clear holding of Strickland is that when assessing the prejudice that has befallen a defendant who has received deficient performance from his attorney, the post-trial statements, the post hoc statements from the presiding judge are irrelevant to the prejudice inquiry. And I do apologize to the Court if we did not emphasize this enough. But I do want to point the Court to, this is in Strickland, 466, U.S. Reports at 700. And I'm quoting from there, and I apologize for the length of the quote, but it really states quite clearly the holding and the fact that these post hoc statements are, as are at issue here from the trial judge, are irrelevant. And there needs to be an objective inquiry, as this Court found in Miller, and also more recently in 2018 in Garner v. Lee. And we cite many other cases from out of circuit as well making this holding. Our conclusion I think the language, I don't want to use up your time quoting from a case. Strickland and Hill, they talk about the idiosyncrasy. We don't consider the idiosyncrasies of the decision-maker. I think that's where you're going with this. I apologize, Your Honor, but I did want to emphasize something that perhaps we didn't emphasize enough in our brief, which is separate language, which I think is more to the point and absolutely very clear as to the clearest aspect. Go ahead. We therefore need not consider the general admissibility of that testimony. That's referring to testimony that the sentencing judge in Strickland provided at the district court. We therefore need not consider the general admissibility of that testimony, although, as noted, Superintendent 695, that testimony is irrelevant to the prejudice inquiry. For that reason, this court in Garner, 7th Circuit in Harris, all the other cases that we cite, get it exactly right. It is clearly established under Supreme Court precedent that it is an objective assessment. It seems, counsel, that you focus on that and you describe it as subjective. And the other side says, well, it's just the default rule, right? The State says it's just the default rule. We always presume that the decision maker is going to understand the law and apply it. So there's a way in which in the 440, I think the judge is just stating from a personal perspective what we would always assume to be true. But that seems to me to be the end of the prejudice analysis in the 440. And I understood part of your argument to be whether that's idiosyncratic or not. What we don't see is an evaluation of the import of counsel's deficiency on the decision maker. That's exactly right, Your Honor. And that is contrary to Strickland, because Strickland says, what is the impact from an objective perspective of the constitutional error here, the error here? And so I think then it causes one to ask, well, what is the error precisely? Right? Is the error just informing the judge of what we assume him to know, which is that there's a reasonable foreseeability requirement? Or is it something else? If Your Honor is referring to what is the error by the trial judge in the post? No, no. Yes.  Yes. The trial judge's core error in the 440 decision was to completely rely, there's really no other basis in the decision, just on the logic that I was the judge. No, no. I'm sorry. That is what I meant. I'm asking what trial counsel's error was. Oh, excuse me. That everybody agrees was deficient performance. Trial counsel's error was that he did not raise a foreseeability defense. Now, to back up the facts here. And that would mean, I presume, investigation, cross-examining witnesses, putting on evidence, making arguments in summation. We don't see any of that here, right? Exactly right, Your Honor. And does Strickland require consideration of that as a question, in answering the question of what objective impact that had on the decision maker? Yes, absolutely, Your Honor. It needs to, Strickland prejudice inquiry needs to assess the likely impact of the foregone defense, the foregone argument, perhaps, as in Strickland, the foregone mitigation evidence that was not put on. What impact that would have had on the ultimate verdict at the original proceeding? So does the 440 judge do any of that? Or does the 440 judge just state what we always assume to be true, which is that he understood and applied the law? The latter, Your Honor. The court does get into it a bit later with respect to a sufficiency determination. But as to the reasonable probability Strickland prejudice assessment, the entire logic is that I, the judge, thought about it at trial, and accordingly I know that it would not have succeeded, without any other explanation. Well, there was the discussion of Kibbe, and there was the reference to the jury, the pattern jury instructions, which include foreseeability in the causation issue, and that was argued and decided, right? Your Honor, the trial judge does claim in that section of the 440 decision that his reference at verdict to Kibbe does evidence the fact that he had considered foreseeability. I think it is abundantly clear in context that actually what the court was doing when referencing Kibbe was analyzing the factual causation standard. But even still, we assume, whether he says it there or not, we assume that he understood that there was a reasonable foreseeability element, right? Your Honor, there is a presumption, perhaps of regularity, with respect to what the court understood. But that presumption can be overcome, particularly when we're dealing with these post hoc statements of the sort that we have here. We see this in this court's decision, for instance, I believe in advance. But if he had said nothing, if he had said nothing, we would assume that he understood there's a reasonable foreseeability element, and in deciding the case, and it's uncontested, there's sufficient, minimal, but sufficient evidence. So we assume that he considered it. But I still, but so what he said seems to be precisely what the assumption requires. And in a way, then, his prejudice analysis, he could have said nothing and you'd have the same prejudice analysis, I think. Well, two points on that. It is true that under Deer said, well, at verdict, the court did not need to explain its verdict. But that would, if the court had not said anything at verdict, that gave rise to the very clear impression that foreseeability had not been assessed by the judge. Nonetheless, it does not make sense to analyze a Strickland claim from the perspective of the trial court's assessment of Strickland, excuse me, of this foregone argument of a foreseeability defense during trial in 2012. Because a foreseeability defense was simply not put on at all. There's no way for a trial judge to assess the strength of an argument that was not developed as Your Honor was pointing out. So maybe I can ask the other question, a question in a slightly different way. It's your burden, right, to prove prejudice. So what evidence, what affirmative evidence do you have that foreseeability wasn't considered? Well, the record as it stands right now, I think, already does prove that, as Your Honor is perhaps suggesting. So first of all, as far as we can tell from the record, Mr. Battle was simply a 23-year-old man who looked his age. Simply put, this is not a person who seems to be at significant risk, any real reasonably probable risk. I mean, doesn't it depend how you, at the level of generality you kind of define the issue? Like if, I mean, isn't it foreseeable that if you rob someone at gunpoint that it could result in a heart attack? That seems common sense to me. Your Honor, I don't think the principle under New York law is that general. And I would really point this court to what happened in the Davis case from 2016 decided by the New York State Court of Appeals. In that case, there was a violent home invasion robbery. The victim was obese. From this violent home invasion robbery, this is emphasized in the Court of Appeals decision, the State Court of Appeals decision. There was blood spatter. There's a lot of emphasis in the decision as to the violent nature of the assault. Nonetheless, first of all, the appellate division, the four judges of the Fourth Department appellate division had unanimously found foreseeability was not established. That's one. At the New York State Court of Appeals, despite the gravity of the violence in the incident and despite the obesity of the victim, it was still not a unanimous Court of Appeals judge Rivera dissented. And we would also urge Your Honor to note that there in these cases that the people point to in Davis, these were sufficiency determinations. This is just whether there's, you know, a reasonable line of inferences that any trier of fact could use to come to find foreseeability. And as I understand it, like, again, thinking about, as I understand, strictly requires to think about the import of the deficient performance on, objectively on the outcome. So one would imagine in summation at a bench trial, arguments about the absence of comparable evidence and distinguishing these cases, right? That might be something that one could imagine would happen. And cross-examining witnesses. Was he obese? Did he show signs of vulnerability? Putting on evidence of, you know, of his appearance as to all of these things. I would think that the absence of those, I think the question is, does Strickland require prejudice to be analyzed from the perspective of what was in the decision maker's head? No, we know that that's not because the law tells us to assume the decision maker knows the law and we examine it objectively. I understand Strickland to tell us we examine the import on the decision maker, whether it's a jury or judge in a bench trial, of what counsel did or didn't do. And so those distinctions between those cases, one could imagine, would be the distinctions that competent counsel would have argued in summation following a presentation of evidence and cross-examination of the differences between the defendant petitioner here and the parties in those cases. Fair to say? That is absolutely all correct, Your Honor. Can I follow that up with a question? What evidence of foreseeability would counsel have put on that would be different from causation? Can you give me an example of the types of things that wouldn't be encompassed by what was already presented? Well, two things to point to, Your Honor. First of all, a focus in cross-examination would, I think, have been very telling with respect to the appearance of the victim, Mr. Battle. To what extent did he or did he not seem infirm, vulnerable to any sort of heart attack, internal ailment of the sort that unfortunately befell him? I think that's a very important piece. You know, we know from the record, and this wasn't brought up, but in general we know from the record that it appears that Mr. Battle was a pretty active person that, you know, the night before he had been out all night. So to the extent we have an info record. Didn't all that come out through the medical evaluation? It did, Your Honor. But a foreseeability defense was not put on. And this gets to the next point, which is that the Sixth Amendment guarantees a right to a summation, not even just at jury trials, but this is Harris v. New York from the Supreme Court. There's also a right to a summation under the Sixth Amendment at bench trials. There was no summation here. There was no marshalling of the facts. And, yes, it is a bench trial. But the Sixth Amendment guarantees that there will be a counsel to put everything together into a cogent form that this professional who is providing constitutionally competent counsel will make the arguments and gather everything together, point to case law, for instance, to make a strong presentation on the foreseeability defense. And that just did not happen here. Before you sit down, can you talk to me about what you think Bradshaw v. Ritchie, the Supreme Court case, holding that a state court's interpretation of state law, including on direct appeal, the challenge case, binds us on habeas review, how that fits into this? Because my understanding is that the state court, specifically in the context of sufficiency, said that foreseeability was established here. So what do we do about that case? Well, Your Honor, the state court, the appellate division, in the decision on direct appeal here did make a sufficiency determination. But that was not a determination as to whether there's a reasonable probability that a defense as to foreseeability could have succeeded, which is the question facing this Court, facing any Court that is assessing an ineffectiveness claim. And with respect to the actual Strickland ineffectiveness claim, the Court only provided a- But what do we do about the fact that we had a state court interpreting state law and reaching this conclusion? Like, aren't we bound by that? Your Honor, I don't believe so. If that was the case, I believe a large proportion of ineffectiveness claims would automatically fail, given the tracks that many appeals take, where the ineffectiveness claim will be consolidated, for instance. There will be also a direct appeal, which I generally believe is required for exhaustion. If that was the case, there would be no habeas, essentially, jurisdiction available to correct the grave errors of the sort that we see here. There was no holding by the appellate division with respect to whether there's a reasonable probability that a defense could have succeeded, again, because this is a sufficiency determination. That's not a holding with respect to whether there's just a chance that the defense could have succeeded, which is, I think, a distinction that makes a real difference with respect to this claim. Thank you, counsel. You've reserved a couple minutes for rebuttal. Good morning. Julian Joris for the respondent. I'd like to focus just a little bit first on this Court's decision in Dunham v. Travis, which the more I've looked at it in preparing for argument, the more I think is just about on all fours here, in terms of ed-ba-deference and in terms of the merits. In Dunham, this Court engaged in precisely the kind of analysis that my opponent is now calling unreasonable with regards to the prejudice prong of Strickland, considering the fact that it was a bench trial, looking at not only the judge's statements at the bench trial, but the fact that that same judge on the 440 motion to vacate was not persuaded by the defendant's arguments and found that that established that there was no prejudice under Strickland. I know my opponent takes the position that the prejudice analysis in Dunham is dicta. I just don't think that's the case. This Court had a holding on the prejudice prong as well as the performance prong. You can't just point to the one that you disagree with and say that that one is dicta. The defendant also faults Dunham for not taking account of the rule that the defense draws from Strickland and Hill. This Court was not ignoring this rule. This Court was disagreeing with the defendant's interpretation of Strickland and Hill. So you can't just say, well, the Court disagreed with me, therefore we should disregard that decision. Dunham, to your mind, stands for the proposition that we can consider the trial judge saying that he understood there was a reasonable foreseeability element and considered it. It stands for that. And it also stands for, you know, there's significance here to the fact finder at the trial, at the bench trial being the same judge who was unpersuaded by these arguments at the 440. What arguments? The arguments that defendant marshaled very ably at the 440 proceeding to say, oh, here's all the arguments my attorney should have made. He should have argued that it was unforeseeable because of X, Y, Z, distinguishing these cases. On the subject of what was the nature of trial counsel's error, I would like to point out, there's been a lot of discussion about what the nature of trial counsel's error was. So do you understand Dunham to be sort of like a bench trial exception for prejudice analysis or do something different for prejudice analysis than in a jury trial? Or is the analysis the same? I wouldn't call it an exception. I would call it, it's a recognition about the significance of having a fact finder who's presumed to know the law. Obviously, in a jury trial, the jury would be instructed on the law. So the similarities, you know, there are similarities there. But it is especially looking at the unique situation of having a fact finder at trial who, you know, be the one who rejected the arguments in the post-conviction proceeding. Obviously, that doesn't happen with jury trials. So to the extent that that gives us a different analysis, I suppose that that makes the analysis somewhat different under some circumstances for bench trials. So how would you articulate what the bench trial prejudice analysis is? Well, I think, again, in general, you're just looking at, you know, just... Like what test would you say? Dunham tells us, here's the test for assessing prejudice under Strickland in the bench trial context. So, again, I think the specific, the really specific relevance of Dunham gets a lot to the fact when it is the same judge who is the bench trial judge who is reviewing the post-conviction motion. And as this court said, like that offers further... When you go to the same judge and say, here's all these arguments my attorney should have made, and that same judge says, okay, I know the law, I remember the facts, and I am unmoved by those arguments, that has at least somewhat more weight than a judge saying either about another judge or about a jury. That is a factor that's definitely relevant here. One word that's thought about Dunham is that even if this prejudice analysis is done on word dicta, that this court is not unreasonable when it writes dicta any more than it's unreasonable when it writes holding. So you're not asking for us to always credit the post hoc statements as conclusive. You're saying in certain circumstances. So if you could tell me why you thought... I'm correct, right? You're not saying that Dunham says that they're conclusive statements just because it's been said. Absolutely. So what are some of the indicia of reliability or when we should consider them and when we shouldn't? I mean, I think it's always appropriate to consider them, and it's really a matter of how much weight to give them. There are things... I mean, what sort of set forth in the case law... You mean weight? Are we talking about epidefference here? I think we're talking about both epidefference and the merits. Here, I believe that this was the correct analysis for the 440 court to engage in and for the district court to engage in. And I believe it was correct. Therefore, I don't believe it was unreasonable. But you look to things like, well, is what the judge is saying post-conviction belied by what the judge said on the record at trial? I know my opponent cites... Essentially, he cites omissions that the judge didn't... But he also says that he used the word unforeseen, right? Oh, right, that he used the word unforeseen. That was at sentencing. That was about what the defendant's own mental state was. Okay, so one... I'm sorry. I don't mean to be cutting you off. I'm just... I'm interested in this. So when we do not treat them as conclusive, when we do not treat post hoc statements, at least one of them, if it's belied by the record... Correct. Are there any other circumstances? I mean, I don't know if I can, you know, put together just a list of factors. I will say that the facts that I would point to to support the judge's statement in this case is that this was... He references... He says, look, I made these statements on the record. I referenced People v. Kibbe, which is the landmark New York case on foreseeability. He says, I consulted the criminal jury instructions, the pattern jury instructions on causation. That in itself is a... That's what you would expect the judge to do in a bench trial. That's causation. It has both but-for causation and reasonable foreseeability in there. So there's no reason to think he would have just kind of skipped past the parts about foreseeability in reading. If the unforeseen comment had happened at the guilt phase, would you think that that would have been enough of an indicia of unreliability? I don't think so. I think it's particularly telling that it occurred at sentencing because obviously the defendants, whether he saw this coming or not, he personally, that goes to whether to give a harsher or more lenient sentence, whereas it's not particularly relevant to his guilt of felony murder. You'll notice when the... What about if a trial court left out an element of an offense in its entirety? Like, for example, leaving out causation or something along those lines. Would that have been an appropriate indicia of unreliability? No, because in a bench trial under New York law, the court is not required to explain its reasoning, period. So you can't infer anything from the fact that it doesn't specifically set forth one factor or another. It doesn't have to say anything. Obviously, if the trial court had said at trial... So it needs to be an affirmative error is basically what you're saying. I would say that would definitely undercut... If the trial court had said, and we have cases, you know, defendant cites affirmatively misstated a standard of proof, affirmatively misstated an element, that would undercut certainly the judge's later statement that, oh, no, that's not what I meant. Here we don't have such a... I'm sorry that I can't provide you a sort of bullet list of all the factors. I think it's a very case-specific determination. If I could turn... Can I just quickly, because I think that's... And your papers argue it as in the unreasonable application context. The other side argues it as contrary to, which I don't see... I'm curious, because I didn't see a lot. You were kind of talking past each other in the briefs, your view. So on the contrary to contention, if in the 440 proceeding the judge says, Strickland requires me to consider whether the decision-maker understood the law, that's how I assess prejudice. But I don't consider the import on the decision-maker of what counsel did or didn't do. Is that consistent with Strickland? Would that be consistent with Strickland or would that be contrary to Strickland? No, I think the prejudice analysis, that sounds contrary to Strickland. Prejudice analysis is what is, you know, obviously under a reasonable probability standard, what would the impact have been on this decision-maker of the error. And this gets to really the only concrete error the defendant is able to point to is saying, my attorney should have pointed to these facts, these very, very simple facts. This is like essentially a two or three witness trial as far as the facts relevant to foreseeability, and said it was unforeseeable. He has talked about my attorney could have cross-examined witnesses, my attorney could have brought in other witnesses, so forth. He hasn't shown any reason to believe that those witnesses, that an expert, that a cross-examined witness would have yielded any different evidence. What about summation? Argument regarding either the minimal evidence in the record, or contrary evidence in the record of reasonable foreseeability, and maybe distinguishing some of the cases as they do now. Right, and that's, my point is summation is essentially, that's all he's got. He had the opportunity, I want to be very clear here, he could, at the 440 proceeding, proffer evidence with his papers to say, judge, here's affidavits from experts, here's documentary evidence, reasons to give me a 440 hearing, or even without a hearing, here's reasons to believe there is evidence that my attorney could have introduced. There are questions he could have asked, there are people he could have called. And if the 440 judge says, I don't care about any of that, because I understood under Kibbe that there's a reasonable foreseeability requirement, and I took it into account. So any evidence as to what the trial lawyer would have done or didn't do, would that be consistent with Strickland or contrary to Strickland? I think, I'm sorry to give a non-answer answer, it would definitely be a closer, it would be something closer to, I think, Gersten v. Sinkowski. Which one? I believe it was Gersten v. Sinkowski, or one of many cases that my opponent cites, in which, at the motion to vacate, the defendant did proffer a whole bunch of evidence saying, look, my attorney should have introduced this at trial. Here he didn't do that. He could have done that. He was represented by the same zealous, tenacious attorneys who have been representing him since his conviction. And the only evidence that he proffered was his trial attorney's affirmation, which goes to the performance problem. Yeah, I understand those points. I guess I'm still just trying to figure out whether the argument belongs in the contrary to or in the unreasonable application, and to depress that, I'll ask the hypo again. If the judge says, I'm not considering any of that, would that be contrary to Strickland? If the judge says, I'm not, like, okay. What matters is that I, the decision maker, know the law, so I'm not going to consider what counsel might have done, could have done, didn't do. That does sound contrary to Strickland to me, yes. Obviously, hypos, yeah, and I'm trying to give you a useful answer to the hypo, but it's also sometimes hypos are. They're hypos. They are. But, no, I think if the 440 court had said, I don't care, you gave me this stack of affidavits, you have a witness list of all these people you want me to hear, I don't care. I am saying, because it doesn't matter what your attorney did or didn't do. I'm the judge. I know everything. That sounds contrary to Strickland to me. And then I guess the next version is if the judge, the 440 judge, says not what I'm not considering but only says what I'm considering is whether I, the decision maker, knew there was a reasonable foreseeability requirement and considered it. Well, here, when the 440 court has been presented with the arguments, and that's essentially what we have here, the way it was phrased by the 440 court, is saying, all right, you've made your arguments about foreseeability, and all that's telling me is you would have pointed to this, you would have made these arguments below, and they wouldn't have mattered. That's how I read the 440. Where's that in the 440 decision? I don't think. That's my reading of the 440 decision, right? It's not as precisely articulated as, for example, this court would articulate in an appellate decision. You never know. But the judge is saying, I was presented with all these arguments. The same arguments have been made in every forum since about foreseeability, and I am unmoved by them, and I would have been unmoved by them. Yeah. That's my reading of the 440 court's decision. Isn't it more of a factual finding? He said it's not what he would have done in a hypothetical situation as much as what he had considered and decided based on, including foreseeability, C, Kibbe, C, Patterns, Jurisdictions for causation. Correct, Your Honor. He's saying, when he's saying this is what I did, this is what I knew, this is what I considered, that's absolutely making a factual finding about what he did. And now he's saying, based on those facts, based on the fact that I knew about this, based on the fact that I knew about the law and I saw these facts, this argument that you're now presenting to me, there's no reasonable probability that it would have affected the outcome of the trial, meaning there's no reasonable probability that it would have led me to acquit the defendant. If I could just, two quick notes regarding the appellate division's decision. Very briefly, the appellate division didn't just decide facial legal sufficiency under its powers as an intermediate appellate court in New York. It also reviewed, it has a factual review power, and so decided that the weight of the evidence supported the conviction. And the defendant did also raise... Because that was without the benefit of the affidavit from counsel, right? Yes, absolutely. It was on a different, it was just confined to the trial record, but I just want to make sure it's clear there was weight of the evidence review, and albeit with a different record, that it did reject the ineffective assistance claim. That's all I just wanted to make clear. Thank you. Thank you, counsel. We'll hear from him. Thank you, Your Honors. First of all, going somewhat chronologically, my colleague explained that we are just, the defense is drawing the principle from Strickland ourselves, and that Dunham contradicts. We point to numerous cases, including this Court's decision in 2018 from Garner, which postdates the Dunham decision by more than a decade, I think quite clearly articulating the rule that is seen in Strickland. We also cite any number of other out-of-circuit cases from circuit courts, indeed finding a violation of clearly established law on this point. Well, it's not just Dunham. It's Kimmelman, too, from the Supreme Court that says that the post, the after-the-fact statements of the decision-maker are relevant to the inquiry, right? Thank you, Your Honor. There's a distinction to be made there in that in Kimmelman, the post-trial statement that was being made was at a post-trial bail hearing about a month or two after a sentence had been handed down. So, in effect, the equivalent in our case was essentially the trial court's statement at sentencing. That was not the trial court's post hoc. So when does a decision-maker's after-the-fact decision statement lose its deference? After a year? I cannot come up with a specific timeline. And I can say that, at least procedurally, when it is in the context of a post-conviction motion to vacate, and we are not looking at the transcripts, the record of the original proceedings, but are instead looking in a rear-view mirror, at that point the original judge's statements no longer have any relevance. With respect to Dunham also — No relevance? None at all? I do think that the best reading of Strickland is that there is no relevance at all. That is what the Supreme Court says in Strickland. That's what you're asking us to hold? I don't think your honors need to go that far. I think all that your honors need to find is that it is not meant to be the overriding factor. In this case, it was — So if it's not overriding and it's not dispositive, if it's not conclusive, what are the circumstances in which we should temper our reliance on it? Well, for instance, as in this case, where there are these indicia of unreliability, as we see here, every time that the trial judge discussed the causation at trial and at sentencing, there's no mention of foreseeability. Yes, the trial judge adverted — referred to Kibbe. But if I may, your honors, it is clear in the context of the transfer that the trial judge there was talking about factual causation, whether it was something that started the chain of events. That language is in Kibbe as well. And if we look to what the court was discussing as the law — But you're basically arguing that because it was incomplete, that we should infer that they forgot it. That because the district court didn't mention it. So as far as I can tell, you have the use of the word unforeseen at the sentencing phase. You have the fact that the causation standard kept getting cited without mentioning foreseeability explicitly. Do you have anything else? So in the statement, the verdict, as your honor was mentioning, there was — there are two mentions at sentencing. First, the sometimes unforeseen things happen statement, which if the court had actually been considering foreseeability at the time. Okay. So it's those — There's a third. And then it's that statement. Is there anything else? There's a third earlier in the sentencing transcript. This is at Appendix 277. The court says, defense conceding robbery, causation being proven, there is no alternative for this court but to find the defendant guilty.  So in every instance except for the one where they use the word unforeseen, it is the failure to specifically mention foreseeability? Yes. That is one of the indicia. It is also the fact that it is just never discussed in the record at all. And again, I would go back to the fact that everyone agrees that there was no foreseeability defense ever put on. And the Sixth Amendment guarantees the right to counsel to assist their client with the defense. This defense was never put on. But the law has causation, and foreseeability is not always. But here, it's hard to see the daylight between what a foreseeability defense would have encompassed that causation didn't. Respectfully, Your Honor, I strongly disagree. The causation defense, as it was put on at trial, was about causation, whether my client's conduct, as alleged, did literally cause, was an actual contributory cause to the chain of events leading to Mr. Battle's death due to his congenital heart condition. Now, yes, they are both within the rubric of a causation as a formal matter. But for instance, again, referring to the Court of Appeals decision in 2016 in Davis, these are separate elements requiring separate analysis. The Court of Appeals in Davis assesses the two questions totally distinctly with regard to whether it was reasonably foreseeable as an outcome. And there was simply no discussion at trial about foreseeability whatsoever. And just on this point as well, in response to Your Honor's question regarding Bradshaw and the holding of the appellate division, the record was not only incomplete simply because there was no evidence put on it. There was no cross-examination, I'm sorry if I can't emphasize, to develop more information from the State's witnesses on this point. That was not something that could have been done at the time. There was no way for the appellate division to assess that in the record as well. Counsel, so I mentioned this to the other side. The briefs kind of talk past each other a little bit. You're primarily in the contrary to category, although you also argue unreasonable application states on the unreasonable application. So I understand your primary argument is about what the court did here as contrary to Strickland. Could you just start? If that's right, tell me if that's right. Okay, so what is the law, what is the rule that 440 Court is invoking that's contrary to Strickland? Yes, we do, first of all, primarily rely on the contrary to prong of input. The rule that is diametrically opposed to Strickland's rule, the language from Williams, is that the court was assessing Strickland prejudice based on its subjective view and experience of the trial, not the objective assessment of the likelihood that a foreseeability defense would have succeeded. This is the language that's used. The objective view would still have accounted for the decision maker, right? We don't replace the State trial judge with a new reasonable jurist, do we? Oh, you do, Your Honor, yes. The rule is to assess how a hypothetical reasonable jurist would, or fact finder, frankly, because this applies also to juries, would have assessed the totality of the evidence if the omitted. So then how do you square that with Kimmelman, where it is relevant, the Supreme Court tells us what the fact finder or what the decision maker said afterwards? Again, Your Honor, Kimmelman is not to the contrary whatsoever. Kimmelman there was assessing the transcript of the original proceedings, which was a bail hearing. That was not the statement from the trial judge as part of the post-conviction motion sedate case, as part of a response to a Strickland claim. The equivalent, again, to what was assessed in Kimmelman in this case was the statements by the court at sentencing. Kimmelman was saying that the statements at the bail hearing were not irrelevant because, yes, that was part of the original record. And, of course, we discussed at length the original record of statements at trial and at sentencing by the judge, which is exactly what Kimmelman approves of in the relevant footnote that the people do point to. So I think it is quite clear, and, you know, the decisions from both this court and so many other circuits make clear that, you know, this is not a rule that just we are finding in the morass of Strickland. This is a quite clearly recognized rule by several circuits, and I would say including this one in Gardner from 2018. And if there is a conclusion that it is contrary to Strickland, then the court would then just go straight into the prejudice analysis under Strickland without the double deference that one would do in the unreasonable application prong. Is that right? Exactly. Under the unreasonable application prong, you would ask would every reasonable jurist conclude that but for the lawyer's deficient performance, there is a reasonable probability the outcome would have been different. And under contrary to, we ask is there a reasonable probability in light of the deficient performance that the outcome would have been different. Do I have that right? It is certainly true that if we find that the rule applied was contrary to Strickland, that removes all epidefference and this court then assesses the Strickland claim, which in this case is just the prejudice question, de novo. That is certainly true. I think, frankly, that it could also be the same with respect to unreasonable application. This is, I believe, how the Seventh Circuit did it in the Harris case that we assess, that we discuss in our briefs. But leaving that to a side, we do certainly submit that the argument with respect to contrary to is strong enough to get this court to dismiss, you know, the generally applicable epidefference and just go straight to the de novo review of the Strickland claim for sure. Thank you. Okay. Thank you, counsel. Thank you both. We'll take the case under advisement.